STATE, Appellant, v. FOELLMI, Respondent.

*No. State 137. Argued January 31, 1973.—Decided March 13, 1973.*
(Also reported in 205 N. W. 2d 144.)

574

For the appellant the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondent there was a brief by *Rice & Abbott* and *Steven Luse Abbott,* all of Sparta, and oral argument by *Steven Luse Abbott.*

WILKIE, J.   One issue is presented by this appeal: May a trial court validly sentence an individual to a term of one year or more in the state reformatory with the intention (at the time of sentencing) of bringing such individual two months thereafter before the court in order to modify the initial sentence, stay such sentence, and grant probation?

The trial court's original sentence here was invalid because it did not conform to the requirements of sec. 973.02, Stats. This section provides:

"973.02 **Place of imprisonment when none expressed.** When a statute authorizes imprisonment for its violation but does not prescribe the place of imprisonment, 1) a sentence of less than one year shall be to the county jail, 2) a sentence of more than one year shall be to the Wisconsin state prisons and the minimum under the indeterminate sentence law shall be one year, and 3) a sentence of one year may be to either the Wisconsin state prisons or the county jail. But in any proper case sentence and commitment may nevertheless be to the Wisconsin home for women, the department or any house of correction or other institution as provided by law."

While the trial court sentenced the defendant to several terms, both concurrent and consecutive, in the state prison (the Wisconsin State Reformatory), it did

so with the then present intention that the defendant would serve no more than ninety days of the sentence in the Wisconsin state prisons. The trial court stated for the record during the hearing at which the sentence was amended (July 18, 1972), that it had intended to review that sentence within those ninety days. This was a circumvention of sec. 973.02, Stats. The legislature has not spelled out specific statutory authority for the procedure employed by the trial court, permitting the sentencing of a convicted defendant on a "trial-run" basis to the Wisconsin state prisons with the intention, not communicated at the time to the defense or the state, that the defendant would be ordered back for a sentence review within ninety days from the date of the original sentence.

Although, in entering its second and amended sentence in which the court reduced the underlying sentences from five to three years and then stayed the sentence and awarded probation, the trial court was reviewing the first sentence in the light of the information developed at the proceedings on July 18th; it, of course, was not acting with a view to correcting the original sentence which was considered invalid. The trial court obviously considered the first sentence valid and was merely reviewing it to determine whether some modification was warranted.

The new sentence is entirely valid. This court has previously approved a trial court's action in entering a sentence that rectified a previous void sentence.[1] In *State ex rel. Copas v. Burke* this court approved the subsequent action of a trial court in committing a sex offender to the sex deviate facility upon the revocation of the previously imposed probation. The trial court had previously imposed a punitive sentence even though

---

[1] *State ex rel. Copas v. Burke* (1965), 28 Wis. 2d 188, 136 N. W. 2d 778.

specialized treatment had been recommended by the department.

This is precisely the situation in the present case and the new sentence in every respect is an effective correction of a previous invalid sentence.

The state contends that the trial court entered its amended sentence without a showing that the initial sentence was bottomed upon either a lack of pertinent information or misinformation. There is no such requirement at the present time as a jurisdictional prerequisite for the modification of a sentence by a trial court. The present rule as stated in *Hayes v. State* [2] is "that a trial court may exercise its inherent power to change and modify its judgments after the execution of the sentence has commenced and the term ended." Although the time limit of ninety days within which a motion to modify a sentence was approved in *Hayes,* this time limit has been subsequently determined to be "regulatory" rather than "jurisdictional" thus permitting sentence modification in certain cases after the expiration of ninety days. [3]

While in *Hayes* this court did not delineate precise guidelines for exercise of the broad discretionary power of modifying a sentence, it did imply their existence:

". . . *Within reasonable limits* we think an unjust sentence should be corrected by the trial court." (Emphasis added.) [4]

In *Hayes* this court further suggested the inherent power of the court to modify a previously imposed sentence "must be exercised within the limits of sound sentencing

[2] (1970), 46 Wis. 2d 93, 101, 175 N. W. 2d 625.

[3] *Lange v. State* (1972), 54 Wis. 2d 569, 573, 196 N. W. 2d 680; *State ex rel. Warren v. County Court* (1972), 54 Wis. 2d 613, 617, 197 N. W. 2d 1.

[4] *Hayes v. State, supra,* footnote 2, at page 105.

discretion." [5] It was also held the reasons for such modification should be elaborated upon by the resentencing court. While both *Hayes* and *Mattice v. State*,[6] also cited by appellant, involved the modification of sentences which had been imposed without the trial court's knowledge of the defendants' true criminal records, neither case mandates such misinformation or lack of information as a jurisdictional prerequisite to subsequent sentence reconsideration and modification.

The recent decision of this court in *State ex rel. Warren v. County Court*[7] does not support the state's jurisdictional contention that the trial court has no authority to modify a previously imposed sentence unless the original sentence was based on misinformation or some lack of information.

While we have previously indicated that the trial court's discretionary power to modify a previously imposed sentence is not unfettered, we deem it advisable to fashion guidelines for the guidance of trial courts in the performance of their discretionary functions of reviewing and modifying sentences. With this in mind, we adopt that portion of the American Bar Association's *Standards Relating to Sentencing Alternatives and Procedures*, spelled out under sec. 6.1 (a) as follows:

"6.1 **Authority to reduce: general.**
"(a) It may be appropriate to authorize the sentencing court to reduce or modify a sentence within a specified time after its imposition or the final resolution of an appeal if new factors bearing on the sentence are made known. . . ."[8]

[5] *Id.* at page 106.
[6] (1971), 50 Wis. 2d 380, 184 N. W. 2d 94.
[7] *Supra*, footnote 3.
[8] American Bar Association, *Standards Relating to Sentencing Alternatives and Procedures*, Part VI, sec. 6.1 (approved draft, 1968).

It is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known. The commentary to the ABA Standards [9] cites *District Attorney for the Northern District v. Superior Court,*[10] which states:

". . . Occasions inevitably will occur where a conscientious judge, after reflection or upon receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account. In such cases the interests of justice and sound judicial administration will be served by permitting the trial judge to reduce the sentence within a reasonable time."

We think the Massachusetts court goes too far. A trial court should not reduce a sentence on "reflection" alone or simply because it has thought the matter over and has second thoughts. It must base its modification on "new factors" brought to its attention.

Nothing said here varies the general rule that this court may review an allegedly excessive sentence or a sentence which is claimed to have been imposed in a manner indicating an abuse of discretion. However, in view of our statement "It is inappropriate for a sentencing court to make a change in an imposed sentence unless new factors are made known," the requirement that a motion be made to the trial court to correct a sentence deemed excessive or imposed with an abuse of discretion [11] is unnecessary to preserve such question for review by this court unless new factors are, in fact,

[9] American Bar Association, *Standards Relating to Sentencing Alternatives and Procedures* (tentative draft, 1967), *Commentary,* Part VI, sec. 6.1, pp. 278, 279.

[10] (1961), 342 Mass. 119, 128, 172 N. E. 2d 245.

[11] *Tatum v. State* (1971), 51 Wis. 2d 554, 556, 187 N. W. 2d 137; *Farley v. State* (1971), 50 Wis. 2d 113, 115, 183 N. W. 2d 33.

present which the trial court should consider as indicated herein.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. *(concurring)*. The affirmance reached by the majority is, in my opinion, correct; but I cannot accept the reasoning. The majority states the first sentence is invalid because it does not conform to sec. 973.02, Stats. The only reason given for this conclusion is the trial court intended to review the sentence within ninety days. To the majority this mental reservation invalidated the sentence. Suppose the sentencing judge should die before he reconsiders, is the sentence still invalid because of the mental doubt or reservation? There is nothing in sec. 973.02 which forbids a trial court to reconsider a sentence or to have doubts that this sentence is appropriate. That section deals merely with the place of imprisonment when no such place is expressed in the sentence. *See Pruitt v. State* (1962), 16 Wis. 2d 169, 114 N. W. 2d 148. In this case the original sentence exceeded one year and named the Wisconsin State Reformatory as a receiving center. This is sufficient to comply with the statute.

The majority charges the trial court with an idea it never had, namely, that the court did not intend the prisoner to remain in prison over one year or even for ninety days; there is no foundation in the record for this assumption. The sentencing judge said on rehearing that while the sentence was stiff it would not bother his conscience "should I decide to leave it." This record does not disclose a situation where the trial judge at the time of sentencing intends to change the pronounced sentence of more than one year in prison to probation. Suppose the sentencing judge decided on rehearing that three years should have been the original sentence instead of five years. Would the first sentence have been

invalid? Here, the trial judge had, at most, a mental doubt that the sentence he pronounced was appropriate. Under such conditions, I consider the first sentence valid and also subject to modification, not that it is invalid and therefore another sentence could be rendered.

But assuming the trial judge sentenced Foellmi to the state prison at Waupun for five years knowing and intending that within ninety days he would sua sponte change or in all likelihood modify the sentence if Foellmi profited by his prison experience, I think such sentencing is within the present power of trial courts and we need no enabling act of the legislature. This practice, which originated in Milwaukee by Circuit Judge MAX RASKIN and was called by him the "shock treatment," is generally known to the trial bench. It is based on the concept that sixty to ninety days in a maximum security prison conveys all the psychological benefit by way of deterrence that a prison term is going to extend to the first offender, teaching better than words and advice what punishment by maximum confinement means. The success of the "shock treatment," of course, rests in part on the lack of knowledge by the convict that the sentence will be modified. If the shock of confinement has no beneficial effect, it may well be the trial judge will leave the original sentence unmodified.

This technique is possible because of the change in view of this court of the inherent power of trial courts over sentencing expressed in *Hayes v. State* (1970), 46 Wis. 2d 93, 175 N. W. 2d 625. In *Hayes* we did not restrict the court's power to correcting an invalid judgment or substituting a new sentence for a void one. *Hayes* did not deal with the power to correct erroneous judgments but dealt with the power of the court to amend and modify a valid judgment of sentencing after the court term had expired or the service of the sentence had commenced.

In changing our position we relied partly on the Approved Draft, 1968, of the American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Sentencing, Alternatives and Procedures,* Standard 6.1, which was quoted at length at page 103. I would think by resting the opinion on this Standard we had adopted it, but the majority opinion states the Standard is now adopted but not the Commentary.

In *Hayes* we cited *District Attorney for the Northern District v. Superior Court* (1961), 342 Mass. 119, 172 N. E. 2d 245, which the majority now says goes too far in stating that a conscientious judge upon reflection can modify a sentence. The majority would restrict reconsideration of a sentence to cases where new factors bearing on the sentence are made known. The language of *Hayes* contained no such restriction and the power of the court was not in any way dependent upon after-acquired information. We stated the lack of knowledge of the criminal record of the defendant was what motivated the court to reduce the sentence, but the lack of knowledge did not go to jurisdiction. The central idea of *Hayes* is that a sentencing judge can within ninety days reconsider his sentencing. There was no requirement that in the exercise of this power it was dependent upon new information, although in most cases, there will be new information. The rule of *Hayes* was adopted to permit the trial judge to free his conscience of a disturbing doubt that the sentence he had given was not appropriate and this could be accomplished either by motion of the convicted person or by the court sua sponte. It was considered ninety days was sufficient time for a judge to finalize his intention and for a convict to raise the question.

I believe the majority opinion is too restrictive of the power of a judge and is a step backward in the criminal

process. If a trial judge believes on reconsideration that he has been too harsh in his sentencing or has failed to give due weight to mitigating factors which he should have properly taken into account, he should have the power to re-examine his sentencing and modify it as his conscience dictates. That is consistent with *Hayes; State ex rel. Warren v. County Court* (1972), 54 Wis. 2d 613, 617, 197 N. W. 2d 1; and *State ex rel. Copas v. Burke* (1965), 28 Wis. 2d 188, 136 N. W. 2d 778, authored by this writer for the court and cited by the majority.

What the court now requires is some new factor justifying the modification of the sentence. What the majority now holds is that a trial court can only correct a sentence when new facts appear to make the original sentence incorrect or perhaps inappropriate. Since new facts may be facts in existence at the time of the original sentence but unknown, as was the situation in *Hayes* and in *Mattice v. State* (1971), 50 Wis. 2d 380, 184 N. W. 2d 94, and also facts which come into existence after the original sentence, as in the instant case, *i.e.*, a change of attitude on the part of the convict, why should not the trial judge's re-evaluation of the facts at the time of sentencing be just as valid a ground for the modification of a sentence?

I respectfully disagree with the concept now advanced by the majority: (1) That a trial judge has no power to validly sentence with a mental reservation or with a possible expectation that he might modify the sentence within ninety days depending upon the effect the imprisonment has on the defendant, and (2) that it is inappropriate for a sentencing court to change an imposed sentence unless new factors are present.

WILKIE, J. *(concurring)*. The court has determined that the practice of "trial-run" sentences is beyond the authority of existing statutory requirements of sec.

973.02, Stats. I believe that the practice has much to commend it and recommend to the legislature that it adopt legislation that will authorize this procedure.

The imprisonment of a convicted defendant for a period of time with the stated purpose on the record of recalling him, after a period of incarceration to re-evaluate and possibly modify his sentence after considering the beneficial impact of his period of incarceration, is a practice that should be allowed within the sentencing options available to a trial court.

CONNOR T. HANSEN, J. *(concurring)*. I concur with the conclusion reached by the majority of the court. However, I respectfully disagree with approbation given "trial-run" sentences in the concurring opinion of Mr. Justice WILKIE. I particularly disapprove of the following statement, ". . . I believe that the practice has much to commend it and recommend to the legislature that it adopt legislation that will authorize this procedure." In my opinion, there are certain instances when it is entirely proper for this court to express its conclusions to the legislature in its written opinions.[1] However, this issue of "trial-run" sentences is not one of them. The problems attendant to the intricate and complicated matters of criminal rehabilitation and the administration of penal institutions and rehabilitation programs far transcend appellate court judicial expertise and wisdom.

I am authorized to state that Mr. Justice HANLEY and Mr. Justice ROBERT W. HANSEN join in this concurring opinion.

---

[1] *Peterson v. Roloff*, ante, p. 1, 203 N. W. 2d 699.